BRAD A. MOKRI, SBN: 208213
LAW OFFICES OF MOKRI & ASSOCIATES
1851 E. First Street, Suite 900
Santa Ana, California 92705
Telephone No.: (714) 619-9395
Facsimile No.:  (888) 342-1406

Attorney for Plaintiff:
MK MANAGEMENT INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MK MANAGEMENT INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SENTINEL INSURANCE COMPANY, LIMITED, a Connecticut Corporation doing business in California, a wholly owned subsidiary of the Hartford Financial Services Group, Inc.; SIMA SHAHINPAR, individually and dba First Affinity Insurance Solutions; and DOES 1-100, inclusive. <br><br> Defendants | Case No.: 8:19-cv-01567 DOC (ADSx) <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES FOR:** <br><br> 1. **BREACH OF WRITTEN CONTRACT** <br> 2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 3. **NEGLIGENCE** <br> 4. **NEGLIGENT MISREPRESENTATION OF MATERIAL FACTS** <br> 5. **FRAUD – NONSDICLOSURE OF MATERIAL FACTS** <br><br> **State Court action filed: July 15, 2019** <br> **Removal filed August 14, 2019** |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiff, MK MANAGEMENT INC., (hereinafter referred to as "MK MANAGEMENT" or "Plaintiff") alleges as follows:

## PARTIES

1.     Plaintiff alleges that at all times mentioned herein, Defendant SENTINEL INSURANCE COMPANY, LIMITED (hereinafter "Defendant" or "SENTINEL"), was and is a Connecticut Corporation authorized to do business in California and also a wholly owned subsidiary of the Hartford Financial Services Group, Inc., and for purposes of this Complaint, conducts its business from the City of Anaheim, County of Orange, State of California.

2.     Plaintiff alleges that at all times mentioned herein, Defendant SIMA SHAHINPAR (hereinafter "SIMA") individually and doing business as First Affinity Insurance Solutions, was and is an individual residing in the County of Orange and the owner of an insurance brokerage business and holding California insurance broker's license number 0773229.

3.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-100, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named defendants is negligently responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were proximately caused by that negligence.

4.     At all times herein mentioned each of the defendants and DOES were the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

/ / /

/ / /

## STATEMENT REGARDING AMENDMENT OF THE COMPLAINT

5. Plaintiff alleges that this amended complaint has been authorized by this Honorable Court pursuant to its order on September 20, 2019, whereby the motion of the initially named Defendant Hartford Insurance Company was granted in that the Court found that Hartford was the incorrect Defendant and that SENTINEL was the correct Defendant to be charged. As such, the Court granted Plaintiff until October 4, 2019, to file an amended complaint correcting the deficiency that rendered the Complaint susceptible to Hartford's motion to dismiss pursuant to FRCP Rule 12(b)(6).

6. Plaintiff alleges that to the extent that the amended complaint complies with the Court's September 20, 2019, order, this amended complaint has substituted SENTINEL in place and instead of Hartford as the Defendant, and has also named SIMA as a defendant with three () additional causes of action in the interests of justice and the liberality of allowed amendments by the Court.

## VENUE AND JURISDICTION

7. Venue and jurisdiction are proper based on Removal Jurisdiction pursuant to 28 U.S.C. §1446.

## BACKGROUND FACTS

8. Plaintiff is an insured under a policy of insurance issued by SENTINEL, covering damage and loss sustained by Plaintiff as a result of business transactions. A copy of the policy of insurance is appended hereto as Exhibit A. Plaintiff has been paying its premiums under this policy number on a consistent basis.

9. Plaintiff alleges that Plaintiff was engaged in a business transaction with a company known as Ecom Direct, Inc.

10. Plaintiff alleges that Plaintiff invoiced Ecom for the products Ecom had ordered from Plaintiff. Ecom picked up the ordered products from Plaintiff's warehouse in Laguna Hills, California and pursuant to the terms of the purchase

orders and corresponding invoices for each delivery of product, Ecom's payment of the invoice was due within fifteen days of the issuance of the invoice. Plaintiff further alleges that when Ecom picked up the products, Plaintiff issued five invoices totaling $832,729.00 for the products pursuant to the purchase orders. For each of Plaintiff's invoices, Ecom delivered a separate post-dated check. Plaintiff attempted to deposit the checks, and all five checks have bounced.

11.    Plaintiff alleges that Plaintiff reported the loss to SENTINEL on or about March of 2019, and thereafter Plaintiff received a form known as "Authorization to Obtain Financial and Factual Information" from Defendants. Plaintiff signed the Authorization and returned the same to Defendants.

12.    Plaintiff alleges that soon after the claim was reported to SENTINEL, Plaintiff received a representation letter from Defendants' field claims representative wherein claim number Y2H F 06985 was assigned to Plaintiff's claim.

13.    Plaintiff alleges that Plaintiff's representative gave an oral statement to SENTINEL's senior claims representative Andrew Booth about the incident that caused Plaintiff's loss.

14.    Plaintiff alleges that without conducting a proper investigation of the claim, on or about April 9, 2019, SENTINEL by way of its employee Andrew Booth denied the claim on the basis that the event was an excluded loss per section B of the policy which states: "*B. EXCLUSIONS 2. We will not pay for physical loss or physical damage caused by or resulting from: f. False Pretense: Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by fraudulent scheme, trick, device or false pretense.*" Plaintiff further alleges that when in a subsequent correspondence dated May 23, 2019, from Plaintiff to Mr. Booth, Plaintiff explained that the items were not entrusted to Ecom but sold, which rendered the exclusion inapplicable, Mr. Booth responded in a letter dated May 31, 2019, that SENTINEL's position remained the same. Plaintiff alleges that SENTINEL's refusal to extend coverage for the loss is a breach of the terms of

the policy and its failure and refusal to investigate the claim when in possession of new and different facts renders its conduct bad faith.

15.     Plaintiff alleges that at the time Plaintiff purchased the policy through SIMA, Plaintiff represented and stressed to SIMA the importance of having sufficient coverage to protect Plaintiff's business against any issues that may arise that would be damaging to Plaintiff's business such as the loss incurred from the transaction with Ecom. Plaintiff even went as far as representing to SIMA that Plaintiff would be amenable to an umbrella coverage in the amount of $5 million U.S. in order to protect the business.

16.     Plaintiff alleges that SIMA assured Plaintiff that the Policy completely covered Plaintiff's business and losses such as Ecom loss and in the event of an incident affecting the business, the Policy terms would completely cover Plaintiff's losses.

17.     Plaintiff alleges that when the incident with Ecom occurred, Plaintiff contacted SIMA in order to find out if the loss was covered. Plaintiff alleges that SIMA assured Plaintiff that the loss was covered and represented that she would call Hartford (SENTINEL) to confirm coverage. Plaintiff further alleges that SIMA called Plaintiff back the same day and informed Plaintiff that the loss was covered.

18.     Plaintiff alleges that when Plaintiff inquired SIMA about the exclusion in the Policy for incidents involving "False Pretenses" SIMA brushed the concern away and represented to Plaintiff that the exclusion did not apply to Plaintiff.

19.     Plaintiff alleges that as a result of the wrongful conduct of SENTINEL and SIMA, Plaintiff has been damages in sums as detailed in this First Amended Complaint.

## FIRST CAUSE OF ACTION
## FOR BREACH OF WRITTEN CONTRACT
**(Against Defendants SENTINEL and DOES 1 to 10, inclusive)**

20. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 19 of this First Amended Complaint (hereinafter "FAC"), as though fully set forth herein.

21. Plaintiff alleges that at all times mentioned herein, Plaintiff and Defendants entered into a written agreement (i.e. the policy) wherein Defendants provided insurance coverage for losses and damages sustained by Plaintiff as a result of a business transaction. The terms of the policy also require Plaintiff's cooperation in the investigation of the claim. (Exhibit **A** – the Policy.)

22. Plaintiff alleges that from and after April 9, 2019, Defendants breached the policy of insurance when they unreasonably and without any basis in fact refused to provide coverage to Plaintiff for the losses and damages sustained by Plaintiff as a result of the transaction with Ecom, when the facts of the loss did not fall under the exclusion cited by SENTINEL.

23. Plaintiff alleges that at all times mentioned herein, Plaintiff complied with all terms of the policy of insurance by making its premium payments, cooperating with Defendants, and its staff regarding the loss claim, and promptly reporting the loss to Defendants.

24. Plaintiff alleges that as a consequence of Defendants' breach of the terms of the written policy of insurance, Plaintiff has sustained compensatory damages in a sum not less than $850,000, plus interest according to proof at trial.

## SECOND CAUSE OF ACTION

## FOR BRACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendants SENTINEL and DOES 11 to 15, inclusive)

25. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 to 24 of the FAC as though herein fully set forth.

26.    Plaintiff alleges that contained in every contract is an implied covenant that each party to the contract will act in good faith and will deal fairly with one another to accomplish the objectives and goals of the contract.

27.    Plaintiff alleges that Defendants as the insurer prepared the policy of insurance without any input from Plaintiff and in effect controlled how the benefits of the policy would be dispensed. In fact, at all times mentioned herein, Defendants was the sole authority on how and in what way coverage would apply.

28.    Plaintiff alleges that from and after April 9, 2019, and continuing thereafter, SENTINEL breached the implied covenant of good faith and fair dealing when it used its superior knowledge, experience, and expertise in the insurance industry and claims adjusting to engage in the following acts:

a.    Misrepresenting pertinent insurance policy provisions relating to any coverage issue by way of ignoring coverage that was afforded under the Policy of Additional Coverages.

b.    2695.7(d) (requiring an insurer to "diligently pursue a thorough, fair and objective investigation.");

c.    2695.7(h) (requiring an insurer to promptly pay "amounts not reasonably in dispute");

d.    failure to comply with  DOI regulation 2695.5 (b) (1) which states the following: (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or

exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim. Every insurer that denies or rejects a third-party claim, in whole or in part, or disputes liability or damages shall do so in writing.

        e.    *Penal Code* section 550;

        f.    Various other components of the 1993 Department of Insurance Regulations.

    29.    Plaintiff alleges that during the course of the adjustment of the claim, SENTINEL did not conduct a thorough, unbiased, and objective investigation. SENTINEL fabricated facts of the loss in order to deny coverage for this loss when SENTINEL erroneously stated that the loss was caused by an entrustment of property when SENTINEL was aware that an entrustment did not occur as evidenced through the facts of the loss and documentation SENTINEL had in their possession when adjusting the loss.

    30.    Plaintiff alleges that the Policy required SENTINEL to indemnify Plaintiff for damage for its business loss in the event of a covered peril and/or loss; and, further required that said benefits would not be unreasonably withheld or delayed. The Policy required SENTINEL to fully and fairly adjust and evaluate the loss; required SENTINEL to act in accordance with the implied covenant of good faith and fair dealing and pursuant to California law. Further, SENTINEL and its adjusters working on its behalf were required to comply, not only with the policy terms, but with the 1993 Department of Insurance regulations relating to claims handling, as previously set forth in this Complaint.

    31.    Plaintiff alleges that SENTINEL was required to properly investigate and compensate Plaintiff for its claim as a result of the covered claim yet did not do so. During the claims handling, SENTINEL failed to fully and completely

investigate the claim, ignored documentation and authority the Plaintiff believed supported its position.

32.     Plaintiff alleges and believes that the loss of its property through a business transaction was not an entrustment of property to another in light of the fact that this was a business situation where Plaintiff was selling property to Ecom, rather than entrusting to property to it. The policy fails to define the term entrust or entrusted, and SENTINEL failed and fails to qualify or explain why the loss is not covered when the event falls outside of the Policy language that excludes coverage, or any other coverages that SENTINEL may attempt to apply to this loss.

33.     Plaintiff alleges that SENTINEL purposefully misconstrued information SENTINEL received on the loss when it failed to address the information provide to it with reference to the absence of a definition for the terms entrust or entrusted, and the lack thereof with reference to Plaintiff's business transaction with Ecom.

34.     Plaintiff alleges that by not considering the sections of the Policy that affords coverage for the loss suffered by Plaintiff, SENTINEL failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim in which liability had become clear.

35.     Plaintiff alleges that SENTINEL has compelled Plaintiff to litigate the matter to recover amounts due under the Policy.

36.     Plaintiff alleges that the Policy requires SENTINEL to indemnify Plaintiff in the event of a covered loss, resulting damage, loss of use, damage to the Subject Property, and requires that said benefits would not be unreasonably denied or delayed.  The Policy further requires SENTINEL to act in accordance with Insurance Code §§790.03, 2701, Penal Code §550 and the 1993 Department of Insurance Regulations and implied covenant of good faith and fair dealings.

37.     Plaintiff alleges that Plaintiff has been harmed as a result of SENTINEL's failure to provide a fair and thorough investigation into Plaintiff's claim.

38.     Plaintiff alleges that had SENTINEL performed a fair and thorough investigation which included the facts of the loss and applied correct language of the Policy Plaintiff would not have been harmed and would have received the benefits of the Policy.

39.     Plaintiff alleges that SENTINEL failed to acknowledge and respond reasonably promptly after receiving communications from Plaintiff concerning coverage and provisions of the Policy when SENTINEL refused to address Plaintiff's concerns contained in the May 23, 2019, letter.

40.     Plaintiff alleges that SENTINEL has refused and failed and continues to refuse and fails to provide insurance benefits for the cost of repair of the damage caused by the business loss.

41.     Plaintiff alleges that SENTINEL has taken an unreasonable position in its reasoning behind the denial of the claim. Plaintiff is informed and believes and based there on alleges that the basis of the denial of the claim was and is unreasonable because the business loss has occurred as a result of covered loss

42.     Plaintiff alleges that as a consequence of SENTINEL's breach of the implied covenant of good faith and fair dealing, Plaintiff has sustained compensatory damages in a sum no less than $850,000.00 according to proof at trial.

43.     Plaintiff alleges that SENTINEL's conduct was and is oppressive, fraudulent, malicious, and despicable in that SENTINEL has intentionally withheld information, knowingly relied upon fabricated facts, and misrepresented Policy information to Plaintiff that are essential to Plaintiff's claim and the benefits to which Plaintiff is entitled under the Policy. Plaintiff alleges that SENTINEL, undertook such actions with a complete and conscious disregard for Plaintiff's legal and

property rights. As such, Plaintiff alleges that the imposition of punitive and exemplary damages in a sum according to proof at trial are warranted. Plaintiff further alleges that SENTINEL ratified the conduct of its employee Andrew Booth when it failed and refused to reverse Mr. Booth's denial in light of new information and facts that demonstrated coverage.

## THIRD CAUSE OF ACTION
## FOR NEGLIGENCE
### (Against Defendants SIMA and DOES 16 to 20, inclusive)

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 to 43 of the FAC as though herein fully set forth.

45.     Plaintiff alleges that at all times mentioned herein, SIMA as a licensed insurance broker dealing with Plaintiff had a duty of care to provide Plaintiff with that requisite of advice and guidance in the selection of insurance for Plaintiff's business based on Plaintiff's needs and concerns and to truthfully represent the coverages and exclusions in the Policy that could affect the presence or absence of coverage in the event of the occurrence of an incident or loss to Plaintiff's business.

46.     Plaintiff alleges that from and after April of 2019, and continuing thereafter, SIMA breached her duty of care when SENTINEL denied Plaintiff's claim as a result of the application of an exclusion in the Policy for incidents involving "False Pretenses" perpetrated by third parties (i.e. Ecom) upon Plaintiff during a commercial transaction.

47.     Plaintiff alleges that despite assurances by SIMA that Plaintiff would be covered for losses such as Ecom loss, SENTINEL continues to stand on its denial of the claim, which has forced Plaintiff into bringing this litigation to redress Plaintiff's losses.

48.    Plaintiff alleges that as a direct and proximate result of SIMA's negligence, Plaintiff has sustained compensatory damages for loss of business revenue, profits, and all ensuing damages thereof in sums according to proof at trial.

## FOURTH CAUSE OF ACTION

## FOR NEGLIGENT MISREPRESENTATION OF MATERIAL FACTS

### (Against Defendants SIMA and DOES 21 to 25, inclusive)

49.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 to 44 of the FAC as though herein fully set forth.

50.    Plaintiff alleges that at the time of purchasing the policy and within the weeks prior to purchase of the policy SIMA represented to Plaintiff that the Policy Plaintiff was being provided through SENTINEL provided sufficient coverage to protect Plaintiff's business against all losses including losses such as Ecom loss. Plaintiff alleges that SIMA provided such assurances because Plaintiff shared a concern that in the absence of sufficient coverage and provisions that would protect Plaintiff's business against loss, Plaintiff could face devastating losses.

51.    Plaintiff alleges that based upon SIMA's representations as an insurance professional holding a valid California license as an insurance broker, Plaintiff purchased the Policy of insurance for Plaintiff's business. Based on the foregoing, Plaintiff alleges that Plaintiff's reliance on SIMA' representations were justifiable and reliance.

52.    Plaintiff alleges that at the time SIMA made representations to Plaintiff about the sufficiency of the Policy coverage, SIMA knew or had reason to know based on her expertise in insurance policy matters that her representations were in fact false. The true representations were that the Policy excluded losses such as Ecom loss that occurred in the course of a business transaction between Plaintiff and a third party.

53.     Plaintiff alleges that from and after April of 2019, the falsity of SIMA's representations regarding the Policy coverage became known to Plaintiff when SENTINEL denied Plaintiff's claim based on the application under the Policy that excluded payment for a loss that occurred through "False Pretenses" during the course of a business transaction with a third party. Plaintiff further alleges that had Plaintiff known of the falsity of SIMA's representations, Plaintiff would have used another insurance broker or would have applied to another insurance agency in order to obtain the required coverage. In the least, Plaintiff would have been able to find other means of protecting Plaintiff's business interests if Plaintiff had been told the truth about the exclusion under the Policy.

54.     Plaintiff alleges that in reliance upon SIMA's representations, Plaintiff paid premiums to SENTINEL and engaged in business activities with the secure knowledge that Plaintiff's business losses would be covered, if and when they occurred.

55.     Plaintiff alleges that as a result of SIMA's negligent misrepresentations of these material facts, Plaintiff has sustained compensatory damages in a sum according to proof at trial.

## FIFTH CAUSE OF ACTION

## FOR FRAUD -NONDISCLOSURE OF MATERIAL FACTS

### (Against Defendants SIMA and DOES 26 to 30, inclusive)

56.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 to 55 of the FAC as though herein fully set forth.

57.     Plaintiff alleges that at the time of purchasing the policy and within the weeks prior to purchase of the policy SIMA represented to Plaintiff that the Policy Plaintiff was being provided through SENTINEL provided sufficient coverage to protect Plaintiff's business against losses such as Ecom loss. Plaintiff alleges that SIMA provided such assurances because Plaintiff shared a concern that in the

absence of sufficient coverage and provisions that would protect Plaintiff's business against loss, Plaintiff could face devastating losses.

58.     Plaintiff alleges that based upon SIMA's representations as an insurance professional holding a valid California license as an insurance broker, Plaintiff purchased the Policy of insurance for Plaintiff's business. Based on the foregoing, Plaintiff alleges that Plaintiff's reliance on SIMA' representations were justifiable and reliance.

59.     Plaintiff alleges that at the time SIMA made representations to Plaintiff about the sufficiency of the Policy coverage, SIMA knew that based on her expertise in insurance policy matters that her representations were in fact false. The true representations were that the Policy excluded losses that occurred as a result of "False Pretenses" in the course of a business transaction between Plaintiff and a third party.

60.     Plaintiff alleges that from and after April of 2019, the falsity of SIMA's representations regarding the Policy coverage became known to Plaintiff when SENTINEL denied Plaintiff's claim based on the application under the Policy that excluded payment for a loss that occurred through "False Pretenses" during the course of a business transaction with a third party. Plaintiff further alleges that had Plaintiff known of the falsity of SIMA's representations, Plaintiff would have used another insurance broker or would have applied to another insurance agency in order to obtain the required coverage. In the least, Plaintiff would have been able to find other means of protecting Plaintiff's business interests if Plaintiff had been told the truth about the exclusion under the Policy.

61.     Plaintiff alleges that in reliance upon SIMA's representations, Plaintiff paid premiums to SENTINEL and engaged in business activities with the secure knowledge that Plaintiff's business losses would be covered, if and when they occurred.

62.     Plaintiff alleges that as a result of SIMA's non-disclosure of these material facts, Plaintiff has sustained compensatory damages in a sum according to proof at trial.

63.     Plaintiff alleges that SIMA's conduct was and is oppressive, fraudulent, malicious, and despicable in that SIMA has intentionally withheld information, knowingly relied upon fabricated facts, and misrepresented Policy information to Plaintiff that are essential to Plaintiff's claim and the benefits to which Plaintiff is entitled under the Policy. Plaintiff alleges that SIMA, undertook such actions with a complete and conscious disregard for Plaintiff's legal and property rights. As such, Plaintiff alleges that the imposition of punitive and exemplary damages in a sum according to proof at trial are warranted. Plaintiff further alleges that as the sole owner of her company, SIMA ratified her own conduct when she failed and refused to represent the true facts to Plaintiff.

**WHEREFORE,** Plaintiff prays for judgment against SENTINEL, and each of the defendants herein, as follows:

## AS TO THE FIRST CAUSE OF ACTION

1.     For compensatory, general, consequential, and incidental damages, in an amount according to proof, but not less than $850,000.00;

2.     For pre-judgment and post-judgment interest from and after April 9, 2019, at the legal rate;

3.     For reasonable costs of suit incurred;

4.     For restitution according to proof at trial;

5.     For any other relief the Court may deem just and proper.

## AS TO THE SECOND CAUSE OF ACTION

1.     For compensatory, general, consequential, and incidental damages, in an amount according to proof, but not less than $850,000.00;

2.    For pre-judgment and post-judgment interest from and after April 9, 2019, at the legal rate;

3.    For attorney's fees per *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

4.    For exemplary/punitive damages according to proof at trial;

5.    For reasonable costs of suit incurred; and

6.    For any other relief the Court may deem just and proper.

## AS TO THE THIRD CAUSE OF ACTION

1.    For compensatory, general, consequential, and incidental damages, in an amount according to proof at trial;

2.    For pre-judgment and post-judgment interest from and after April 9, 2019, at the legal rate;

3.    For reasonable costs of suit incurred; and

4.    For any other relief the Court may deem just and proper.

## AS TO THE FOURTH CAUSE OF ACTION

1.    For compensatory, general, consequential, and incidental damages, in an amount according to proof at trial;

2.    For pre-judgment and post-judgment interest from and after April 9, 2019, at the legal rate;

3.    For reasonable costs of suit incurred; and

4.    For any other relief the Court may deem just and proper.

## AS TO THE FIFTH CAUSE OF ACTION

1.    For compensatory, general, consequential, and incidental damages, in an amount according to proof at trial;

2.    For pre-judgment and post-judgment interest from and after April 9, 2019, at the legal rate;

3.    For exemplary and punitive damages in a sum according to proof at trial;

4.    For reasonable costs of suit incurred; and

5.    For any other relief the Court may deem just and proper.

Respectfully Submitted,
**Law Offices of Mokri & Associates**

Date: October 4, 2019          By:    /S/ BRAD A. MOKRI      .
                                          BRAD A. MOKRI, Esq.
                                          Attorney for Plaintiff
                                          MK MANAGEMENT INC.

**PROOF OF SERVICE**

I am a citizen of the United States and employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 1851 E. First Street, Suite 900, Santa Ana, California 92705.

On October 4, 2019, I served the foregoing document(s) described as **FIRST AMENDED COMPLAINT FOR DAMAGES** on the interested parties in this action by placing a true ( X ) **copy** ( ) **original** thereof enclosed in a sealed envelope addressed as follows:

**John E. Feeley, Esq. / ifeeley@insurlaw.com**
**Michael L. Parker, Esq. / mparker@insurlaw.com**
**SMITH SMITH & FEELEY LLP**
**1401 Dove Street, Suite 610**
**Newport Beach, CA  92660**
**Fax No.: (949) 263-5925**

( X ) **BY ELECTRONIC SERVICE:** I am familiar with the United States District Court *Central* District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned Judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice , the following CM/ECF users were served.

( ) **BY OVERNITE EXPRESS DELIVERY:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the OVERNITE EXPRESS DELIVERY DROP BOX on the same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

( ) **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

( ) **BY PERSONAL SERVICE:** I delivered such envelope by hand to the offices of the addressee(s).

( ) **BY FAX:** (Code Civ. Prod.§ 1013(a),(e); Cal. Rules of Court, rule 2.306)-By transmitting said document(s) by electronic facsimile to the respective facsimile numbers(s) of the party(ies). The facsimile machine I used complied with California Rules of Court, rule 2.3014, and no error was reported  by the machine.

( X ) **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the services is made.

Executed on October 4, 2019, at Santa Ana, California.

/s/ Gissou Mokri          .
Gissou Mokri

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**- 18**